In re SAHUARO PETROLEUM & ASPHALT COMPANY, an Arizona Corporation, Debtor.

CLARK OIL AND TRADING COMPANY, et al., Appellants,

v.

David R. HABERBUSH, Trustee, Appellee.

No. CV 94–1927.
Bankruptcy No. LA 91–68910 WL.

United States District Court, C.D. California.

June 13, 1994.

Steven J. Lee, Roquemore, Pringle & Moore, Inc., Los Angeles, CA, for appellee.

David Jones, Milbank, Tweed, Hadley & McCloy, Los Angeles, CA, for appellants.

ORDER **REVERSING** THE ORDER OF THE UNITED STATES BANKRUPTCY COURT DENYING THE APPELLANTS', CLARK OIL AND TRADING COMPANY, NIC, INC., GIC, INC., PAUL NOVELLY, LAWRENCE ALTMANSBERGER, AND SAMUEL R. GOLDSTEIN, MOTION TO DISMISS THE FIRST THROUGH SIXTH AND FOURTEENTH CLAIMS FOR RELIEF ASSERTED IN THE AMENDED COMPLAINT BY CHAPTER 7 TRUSTEE DAVID R. HABERBUSH AND FINDING THE CLAIMS ARE TIME–BARRED.

ORDER **REMANDING** THE QUESTION OF WHETHER THE SEVENTH AND EIGHTH CLAIMS OF RELIEF ARE GOVERNED BY SECTION 546(A)(1) TO THE BANKRUPTCY COURT FOR FURTHER DETERMINATION.

TEVRIZIAN, District Judge.

## Background

The debtor, Sahuaro Petroleum and Asphalt Company ("Sahuaro"), was a distributor of asphalt and asphalt-related by-products. Sahuaro was one-hundred percent owned by another Chapter 7 debtor, Edgington Oil Company ("Edgington"), which was Sahuaro's primary provider of asphalt product. In September 1989, Clark Oil and Trading Company ("Clark"), a Missouri partnership, purchased a fifty percent interest in Edgington. Clark's general partners are NIC, Inc. and GIC, Inc., both Missouri Corporations.

On March 21, 1991, Sahuaro filed for protection under Chapter 11 of the Bankruptcy Code. On September 5, 1991, the case converted to Chapter 7, and, on September 21, 1991, David R. Haberbush ("Haberbush") was appointed as the Sahuaro trustee.[1] On November 4, 1993, Haberbush filed an adversary action alleging fourteen claims for relief.

On or about January 6, 1994, defendants, Clark Oil and Trading Company, NIC, Inc.,

GIC, Inc., Paul A. Novelly, Lawrence Altmansberger and Samuel R. Goldstein (moving "Defendants or Appellants"), filed a Motion to Dismiss in U.S. Bankruptcy Court, Case No. LA 91–68910 WL, the adversary action brought by Haberbush against the Defendants.[2] On February 22, 1994, Judge Lasarow denied Defendants' Motion to Dismiss. On March 28, 1994, Defendants filed a Motion for Leave to Appeal to this Court. This case was assigned Case Number CV 94–1927 DT. On April 4, 1994, this Court granted Defendants' Motion for Leave to Appeal. On April 22, 1994, Appellants filed their Opening Brief. On May 9, 1994, Appellee filed his opposition to appeal. This matter is presently before this Court.

## Discussion

### A. Standard

■ Decisions by bankruptcy judges may be appealed to the district court pursuant to 28 U.S.C. § 158(a). Ordinarily, this review is limited to whether the underlying court had substantial evidence before it to support the decision and whether the decision is contrary to law. However, if the bankruptcy court was deciding a "noncore" matter, review must be de novo. Bankruptcy Rule 9033; *In re Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989); *In re Foodsource, Inc.,* 130 B.R. 549, 552 (N.D.Cal.1991).

### B. The Filing Of A Chapter 11 Petition Commences The Statute Of Limitations Period Under Bankruptcy Code § 546(a)(1) For All Representatives Of The Estate.

■ Bankruptcy Code § 546 establishes a two-year limitations period on many of the claims most commonly asserted in bankruptcy court adversary proceedings, including fraudulent transfers and preference claims. Recent decisions in *In re Softwaire Centre Int'l, Inc.,* 994 F.2d 682 (9th Cir.1993) and *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993) establish a uniform rule for bankruptcy cases dictating when the § 546(a)(1)

---

1. On review of the Notice of Appointment, this Court finds that the appointment date was in fact September 9, 1991; however, this confusion does not affect the merits of this appeal.

2. Haberbush, in his opposition, characterizes the defendants as "Ignominious Insiders". This Court finds such a portrayal as juvenile and in violation of the Local Rules reference to civility.

limitations period commences and expires. The statute of limitations begins to run on the date the first estate representative takes office and expires two years later, even if the estate representative's identity changes in the interim. In proceedings that begin as debtor in possession cases, as the Sahuaro bankruptcy did, the limitations period begins to run on the petition date, and expires two years later. In this instance, the statute was triggered on March 21, 1991 and expired on March 21, 1993, approximately six months prior to the time Haberbush filed the adversary action.

### 1. The Statute of Limitations Under Section 546(a)(1) Commences Upon The Filing Of A Chapter 11 Petition And Expires Two Years Later.

### a. In a Debtor In Possession Case, The Statute Of Limitations For Section 546 Claims Commences On The Petition Date.

In *Softwaire Centre,* a debtor in possession case, the debtor filed an action which included § 546 claims more than two years after the petition date. *Softwaire Centre,* 994 F.2d 682. The defendants in that action moved to dismiss the suit, arguing that the limitations period of § 546 applied to all representatives, not only to bankruptcy trustees, and therefore, the statute of limitations expired on the two-year anniversary of the petition date. *Id.*

The Ninth Circuit concluded that since debtors in possession have the same rights, powers, and duties as bankruptcy trustees and are subject to all the same limitations, debtors in possession and bankruptcy trustees are "functional equivalent[s]". *Id.* In other words, because the interests of the estate are equally well-protected regardless of who is serving as the estate representative, all estate representatives should be bound by the same two-year limitations period:

> [Section] 546(a) must be read in conjunction with § 1107(a). Not only does § 1107(a) by its terms subject debtors in possession to the limitations imposed on trustees, the legislative history also makes the point. As the Senate Report accompa-

nying the Bankruptcy Reform Act of 1978 makes clear: '[Section 1107] *places a debtor in possession in the shoes of a trustee in every way.* The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee ...'

*Id.* at 683 (quoting S.Rep. No. 95–989, 95th Cong., 2nd Sess. 116 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5902 (emphasis added)). Thus, the Ninth Circuit held that all estate representatives should be subject to the two-year limitations period of § 546(a)(1). *Id.*

In *In re Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990), the debtor filed a Chapter 11 petition in September of 1984. No trustee was appointed, however. More than four years later, the debtor's successor in interest pursued an avoidance action against one of the debtor's creditors. The creditor moved to dismiss on the grounds that a debtor in possession has only two years in which to file a claim governed by § 546. The plaintiff disagreed arguing that the statute of limitations set forth in § 546 only applies to trustees, not debtors in possession. *Id.* at 1524. The Tenth Circuit disagreed:

> We believe § 546 is ambiguous; therefore, it must be construed. We do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. Because of the virtual identity of function between a trustee and a debtor in possession, there would be no reason to create a different limitation period for the filing of actions by the two fiduciaries.

*Id.*

Similarly, in *In re Coastal Group, Inc.,* 13 F.3d 81 (3d Cir.1994), the debtor in possession filed an avoidance action against an unsecured creditor more than three years after it had filed its Chapter 11 petition. The creditor moved to dismiss because the claim was time-barredas. The bankruptcy

court agreed and dismissed the case. The Court held that because § 1107 grants debtors in possession the same powers as trustees, debtors in possession must also be subject to the same limitations as bankruptcy trustees, noting that: "[O]ne of the limitations on the rights and powers of the trustee is the time bar set forth in [Section] 546(a)(1)." *Id.* at 84. Accordingly, the Third Circuit concluded that the debtor in possession filed its claim too late.

In Chapter 11 debtor in possession cases, the debtor generally becomes the estate representative on the petition date. *Softwaire Centre.* This Court concludes, as will be more fully discussed below, that Sahuaro's bankruptcy began with Sahuaro serving as a Chapter 11 debtor in possession. Therefore, under *Softwaire Centre,* the § 546(a)(1) limitations period commenced on the petition date, March 21, 1991 and expired on the two year anniversary of the petition date, March 21, 1993, six months before Haberbush filed the adversary action. Accordingly, this Court finds that the first through sixth, and fourteenth claims for relief are time-barred.

**b.  The Appointment Of A Successor Estate Representative Does Not Restart The Section 546 Limitations Period.**

In *San Joaquin Roast Beef,* a Chapter 7 trustee brought an action governed by § 546 within one year of his appointment, but more than two years after the debtor filed his Chapter 11 petition. The trustee argued that his appointment restarted the two year limitations period. The Ninth Circuit disagreed and held that a Chapter 7 trustee, in a case converted from Chapter 11, does not receive a new two-year period in which to assert § 546 claims. *San Joaquin Roast Beef,* 7 F.3d at 1416.

The Ninth Circuit's determination that an estate representative's successor does not receive a new two-year period is consistent with the goals of § 546 and with the statute of limitations—to provide specific time limits within which "to put the adversary on notice to defend." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). Moreover, § 546 does not contemplate multiple periods of limitation for

each and every trustee in a bankruptcy case. Such a rule would entirely frustrate a potential bankruptcy defendant's ability to rely on the fact that the time for filing avoidance claims expired. Accordingly, once the "specified time period" for asserting claims under § 546(a)(1) commences, it does not begin again simply because the estate representative has changed. As such, this Court finds that the statute of limitations did not restart when the status of the estate representative changed.

**c.  EPI Products Correctly Concludes That The Statute Of Limitations Commences From The Petition Date And Expires Two Years Later.**

The debtor in *In re EPI Products USA, Inc.,* 162 B.R. 1 (Bankr.C.D.Cal.1993), filed a Chapter 11 petition in August of 1990. Soon thereafter, the case converted to Chapter 7. Approximately nine months after his appointment, but more than two years after the Chapter 11 petition date, the Chapter 7 trustee filed an adversary action asserting a variety of claims governed by § 546. Concluding that the action filed by the Chapter 7 trustee in *EPI Products* was time-barred, the Bankruptcy Court stated:

> Relying upon the determination made in the *San Joaquin Roast Beef* case, ... that the conversion to a chapter 7 proceeding does not create a new period of limitations prescribed under § 546(a), and relying upon the *Softwaire [Centre]* case, ... holding that § 546(a) applies to debtors in possession and commences to run from the petition date, this bankruptcy court concludes that in the instant case the two-year statute of limitations prescribed in Section 546(a) commenced on the date of the filing of the original Chapter 11 Petition and terminated two years later ...

162 B.R. at 4.

This Court concludes that the Ninth Circuit decisions in *Softwaire Centre* and *San Joaquin Roast Beef,* and the Bankruptcy Court decision in *EPI Products* warrants reversal of Judge Lasarow's Order in regards to Appellants' Motion to Dismiss. This Court finds that Haberbush filed the adversary action more than two and a half

years after Sahuaro filed his Chapter 11 petition. Accordingly, this Court finds that the first through sixth and fourteenth claims for relief sought by Haberbush are time-barred by the statute of limitations.

### C. The Statute Of Limitations Period Under Bankruptcy Code Section 546(a)(1) Commences Against A Chapter 7 Trustee On the Date He Is First Appointed As Trustee.

### 1. The Statute Of Limitations Commences On The Date Of The Appointment Of The First Trustee, Which Is The Interim Trustee In A Chapter 7 Case.

■ Appellants contend that the statute of limitations begins to run from the appointment of the first estate representative, whether that estate representative is a debtor in possession or a trustee because that is the only way to reconcile *Softwaire Centre* and *San Joaquin Roast Beef.* This Court concludes that Haberbush's claims are barred even if the statute began running on the date he was appointed, because under *San Joaquin Roast Beef,* "the statute begins running from the date the first trustee is appointed." *San Joaquin Roast Beef,* 7 F.3d at 1416. Haberbush became the "first trustee" in the present case on September 21, 1991, the date on which he was appointed interim trustee—two years and six weeks before Haberbush filed the adversary action.

### a. The Limitations Period For Section 702(d) Trustees Commences On The Date That Person Is Appointed Interim Trustee.

Section 546(a)(1) refers to trustees "appointed under" five Bankruptcy Code Sections, one each in Chapter 7, 12, and 13, and two in Chapter 11. Section 701 is the only part of Chapter 7 that discusses the appointment of Chapter 7 trustees. That Section addresses the appointment and responsibilities of the interim trustee. Section 701 places no limits on the powers of an interim trustee, nor does any other Chapter 7 provision. "The interim trustee . . . must comply with the same rules and regulations as a permanent trustee." 4 Collier on Bankruptcy ¶ 701.04. Indeed, all Chapter 7 trustees, including the interim trustee, have the same rights, powers, and duties, including the power to assert claims governed by § 546(a)(1). It is not the least bit uncommon for an interim trustee to assert avoidance actions. Therefore, this Court finds that an interim trustee must be bound by the § 546 statute of limitations.

### b. Notwithstanding The Reference In Bankruptcy Code Section 546 To Section 702, The Action Filed By Haberbush, As A Section 702(d) Trustee, Is Time–Barred.

Section 546 actually cross-references § 702, not § 701; however, this fact does not alter the Court's analysis. Section 702 describes a variety of ways in which a permanent trustee takes office. After the appointment of the interim trustee, at the first meeting of creditors pursuant to § 341, the creditors have three options: 1) elect a replacement trustee; 2) elect to retain the interim trustee, or 3) do nothing; in which case, the interim trustee will remain pursuant to § 702(d). In this case, the creditors took the third option. As such, this Court finds that Haberbush is a § 702(d) trustee.

Haberbush was fully empowered to act as trustee from the date of his appointment. The § 546 statute of limitations, therefore, must expire two years from that date.[3]

This Court finds that Haberbush had two years from the date of his appointment as interim trustee to file those claims governed by § 546. Instead, Haberbush allowed this two year period to expire, filing just before

---

3. Judge Lasarow stated he agreed that for Chapter 7 trustees, the two year statute of limitations period should begin with the appointment of the interim trustee. Transcript 1:15–17; Transcript 10:24–11:1. However, Haberbush argued and Judge Lasarow concluded that a 1989 decision by the Ninth Circuit Bankruptcy Appellate Panel obliged the court to rule that the statute of limitations began to run on the date of Sahuaro's initial meeting of creditors—one year and 364 days before Haberbush filed the adversary action. *See, In re Conco Building Supplies, Inc.,* 102 B.R. 190 (9th Cir. BAP 1989).

This court disagrees. As is noted above, this Court finds that the decisions of *San Joaquin Roast Beef* and *Softwaire Centre* are controlling.

the two year period commencing after the § 341 meeting. Allowing Haberbush to continue pursuing the claims governed by § 546 would extend the statute of limitations period of two years by six weeks which is impermissible.

Accordingly, this Court **REVERSES** the Bankruptcy Court's Order denying Appellants' Motion to Dismiss the first through sixth, and fourteenth claims for Relief in Haberbush's First Amended Complaint.[4] Furthermore, this Court **REMANDS** the issue of whether the seventh and eighth claims for relief are governed by § 546(a)(1) for further proceedings in the Bankruptcy Court.

IT IS SO ORDERED.

---

4. The parties apparently disagree on whether the seventh and eighth claims for relief, for avoidance and invalidation of liens and for determination, validity, and priority and extent of liens, respectively are governed by Bankruptcy Code § 546(a)(1). The evidence presented to this Court does not establish that Haberbush challenged the Appellants' argument in the Bankruptcy Court that these claims are governed by § 546(a)(1). Thus, this Court remands this question, namely whether the seventh and eighth claims for relief are governed by § 546(a)(1), for further proceedings in the Bankruptcy Court.